## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **EP-22-CR-01580-DCG-1** |
| | § | |
| **MARIO JOSEPH DELEON,** | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Presently before the Court is Defendant Mario Joseph Deleon's "Motion to Dismiss" (ECF No. 21) filed pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). Facing a single-count indictment that charges him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), Deleon moves to dismiss the indictment, contending that the statute violates the Second Amendment in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). The United States of America (the Government) opposes the motion. The Honorable Senior District Judge David Guaderrama (the referring court) referred the motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b). For the reasons that follow, the Court concludes that it is bound by the Fifth Circuit's pre-*Bruen* precedents upholding the constitutionality of § 922(g)(1) and therefore, **RECOMMENDS** that the motion be **DENIED**.

### I.   BACKGROUND

On May 28, 2022, Ysleta Del Sur Pueblo Tribal Police conducted a traffic stop on a vehicle driven by Deleon; he was the only occupant of the vehicle.[1] According to the

---

[1] Def.'s Mot. to Dismiss at 3, ECF No. 21; Gov't's Resp. to Def.'s Mot. to Dismiss at 1 [hereinafter Gov't's Resp.], ECF No. 27.

Government, the police officer noticed a strong odor of marijuana emanating from the vehicle and observed an open container of alcohol on the driver's side floorboard.[2]  Further, according to the Government, Deleon advised the officer that he had marijuana inside of his pants pockets, and record checks showed that Deleon had an outstanding warrant from the El Paso County Sheriff's Office.[3]  The officer asked Deleon to exit the vehicle and conducted a search of his person and the vehicle.[4]  The officer discovered a small quantity of marijuana in Deleon's pocket and a Smith and Wesson handgun between the driver's seat and the center console of the vehicle.[5]  Deleon was detained for a period of time, but released afterward.[6]

On September 22, 2022, a federal Grand Jury sitting in El Paso, Texas, returned the single-count indictment charging Deleon with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  According to the Government, Deleon has several prior felony convictions, including a conviction for burglary, a conviction for possession of marijuana, and a conviction for possessing a weapon as a prohibited person/felon.[7]  Following the indictment, Deleon was arrested on May 23, 2023.

---

[2] Gov't's Resp. at 1.

[3] *Id.*

[4] Def.'s Mot. to Dismiss at 3; Gov't's Resp. at 1.

[5] Def.'s Mot. to Dismiss at 3; Gov't's Resp. at 1.

[6] Def.'s Mot. to Dismiss at 3.

[7] Gov't's Resp. at 1, 11, 24.  For purposes of the instant motion, Deleon concedes that each of the three convictions qualifies as a predicate felony conviction for his prosecution under § 922(g)(1).  Def. Mot. to Dismiss at 28–29 (referencing them as "predicate felony offenses"); Def.'s Reply to Gov't's Resp. to Def.'s Mot. to Dismiss at 1, 20, 30 [hereinafter Def.'s Reply], ECF No. 28; *see also United States v. Broadnax*, 601 F.3d 336, 345 (5th Cir. 2010) ("[T]he question whether a felony conviction may serve as a predicate offense for a prosecution for being a felon in possession of a firearm pursuant to § 922(g)(1) is purely a legal one." (cleaned up)).

On June 8, 2023, Deleon filed the instant motion to dismiss.  On June 27, the Government filed its response to the motion, and Deleon followed by filing a reply on July 6, 2023.  While the motion was pending, a panel of the Fifth Circuit decided *United States v. Daniels*, 77 F.4th at 343 (5th Cir. 2023).  In view of *Daniels*, the referring court ordered supplemental briefs from the parties.[8]  The parties' supplemental briefing was completed by August 28, 2023.  On March 25, 2024, the referring court referred Deleon's motion to the undersigned Magistrate Judge.

## II.   STANDARD

Federal Rule of Criminal Procedure 12 allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  Specifically, the rule allows a defendant to file a pretrial motion to dismiss an indictment on the ground that there is "a defect in the indictment," such as the "failure to state an offense."  *Id*. 12(b)(3)(B)(v); *United States v. Vasquez*, 899 F.3d 363, 371 (5th Cir. 2018).  A court may rule on a pretrial motion to dismiss an indictment where, as here, the motion presents a question of law involving undisputed facts.  *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see also* note 7, *supra*.

## III.   DISCUSSION

Deleon moves to dismiss his indictment on the grounds that under the new analytical framework announced in *Bruen*, § 922(g)(1) violates the Second Amendment, on its face and as applied to him.  Def.'s Mot. to Dismiss at 4; *see also id.* at 5–26 (exposition of Deleon's arguments on the two grounds).

---

[8] Order for Suppl. Br., ECF No. 33.

The Second Amendment protects the right of individuals to "keep and bear" firearms for their self-defense.  U.S. Const. amend. II; *see also District of Columbia v. Heller*, 554 U.S. 570, 592, 628, 635 (2008) (holding the Second Amendment codified a "pre-existing" "individual right to possess and carry weapons" for self-defense).  Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition."  18 U.S.C. § 922(g)(1); *see also Rehaif v. United States*, 139 S. Ct. 2191, 2201–02 (2019) (Alito, J., dissenting) (Section 922(g), which "is no minor provision" and "probably does more to combat gun violence than any other federal law," makes "it unlawful for nine categories of persons," including "convicted felons," to engage "in certain interstate-commerce-related conduct involving firearms."); *United States v. Gresham*, 118 F.3d 258, 265 (5th Cir. 1997) ("In order to obtain a conviction under § 922(g)(1), the government must prove," *inter alia*, "that the defendant previously had been convicted of a felony." (citing *United States v. Fields*, 72 F.3d 1200, 1211 (5th Cir. 1996))).[9]

In the wake of *Bruen*, there has been a "wildfire"[10] of constitutional challenges to various subcomponents of § 922(g), and courts "are struggling at every stage of the *Bruen* inquiry" with "numerous, often dispositive, difficult questions" for which uncertainties abound.  *Daniels*, 77 F.4th at 358 (Higginson, J., concurring); *see also id.* at 358–61 (canvassing a non-exhaustive list of open questions regarding the *Bruen* inquiry); *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) ("We require clearer instruction from the Supreme Court before we may

---

[9] *Cf. also* 18 U.S.C. § 3156(a)(3) (defining "felony," for purposes of the Bail Reform Act of 1984, as "an offense punishable by a maximum term of imprisonment of more than one year").

[10] Oral Argument Audio Recording at 13:28–30, *Daniels*, 77 F.4th 337 (No. 22-60596) (oral argument date, June 5, 2023) (remarks by a *Daniels* panel member), https://www.ca5.uscourts.gov/oral-argument-information/oral-argument-recordings.

reconsider the constitutionality of section 922(g)(1).").  In its forthcoming decision in *United States v. Rahimi*, No. 22-915 (U.S. argued Nov. 7, 2023), the Supreme Court "likely will resolve some of these questions." *Daniels*, 77 F.4th at 361.

Meanwhile, post-*Bruen*, all but one of the circuits to address a Second Amendment challenge to § 922(g)(1) (in cases where the issue was preserved in the district court below) have denied the challenge.[11]  The Fifth Circuit has yet to address "the impact of *Bruen* on the constitutionality of § 922(g)(1)" in such a case, *United States v. Jones*, 88 F.4th 571, 573 (5th Cir. 2023), *cert. denied*, No. 23-6769, 2024 WL 1143799 (U.S. Mar. 18, 2024)—though it has decided the constitutional fate of two other subcomponents of § 922(g), *United States v. Rahimi*, 61 F.4th 443, 448 (5th Cir.) (holding § 922(g)(8) is unconstitutional on its face), *cert. granted*, 143 S. Ct. 2688 (U.S. 2023); *Daniels*, 77 F.4th at 355 (holding § 922(g)(3) is unconstitutional as applied), *petition for cert. filed*, No. 23-376 (U.S. Oct. 10, 2023).  However, in the context of

---

[11] *Compare Range v. Att'y Gen.*, 69 F.4th 96, 106 (3d Cir.) (en banc) (holding § 922(g)(1) unconstitutional as applied to a felon convicted of making a false statement to obtain food stamps when government did not show that "our Republic has a longstanding history and tradition of depriving [such] people . . . of their firearms"), *petition for cert. filed*, No. 23-374 (U.S. Oct. 10, 2023), *with United States v. Gay*, --- F.4th ----, No. 23-2097, 2024 WL 1595285, at *2–*3 (7th Cir. Apr. 7, 2023) (denying a challenge to § 922(g)(1) under *Bruen* stating that such a challenge "is hard to square with . . . *Heller*, which . . . pointedly stated that longstanding prohibitions on the possession of firearms by felons are valid" (cleaned up)), *Dubois*, 94 F.4th at 1291, 1293 (following its pre-*Bruen* precedent that "upheld section 922(g)(1) under the Second Amendment" to deny a *Bruen*-based challenge), *Vincent v. Garland*, 80 F.4th 1197, 1199, 1202 (10th Cir.) (following its pre-*Bruen* precedent that "upheld the constitutionality of the federal ban for *any* convicted felon's possession of a firearm" to deny a *Bruen*-based challenge to § 922(g)(1) as applied to an individual convicted of a nonviolent felony (bank fraud)), *petition for cert. filed*, No. 23-683 (U.S. Dec. 26, 2023), *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) (stating "[t]he longstanding prohibition on possession of firearms by felons is constitutional"), *petition for cert. filed*, No. 23-6602 (U.S. Jan. 29, 2024), *and United States v. Jackson*, 69 F.4th 495, 501–02 (8th Cir.) (stating "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)" while denying an as-applied challenge by an individual convicted of nonviolent drug offenses), *reh'g en banc denied*, 85 F.4th 468 (8th Cir.), *and petition for cert. filed*, No. 23-6170 (U.S. Dec. 6, 2023).

addressing unpreserved challenges, multiple Fifth Circuit panels have said that it is not clear that *Bruen* dictates that § 922(g)(1) is unconstitutional.  *E.g.*, *Jones*, 88 F.4th at 574.[12]

More than two decades before the Supreme Court decided *Bruen*, a panel of the Fifth Circuit decided *United States v. Darrington*, 351 F.3d 632 (5th Cir. 2003).  There, the panel held that § 922(g)(1) does not violate the Second Amendment.  *Darrington*, 351 F.3d at 634.  And, shortly after the Supreme Court decided *Heller*, another panel reaffirmed the constitutionality of § 922(g)(1).  *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009).  Post-*Bruen*, the Fifth Circuit has not yet squarely addressed whether *Darrington* and *Anderson* remain binding.[13]

That issue is front and center here.  Relying on the Fifth Circuit's panel decision in *Rahimi*, which addressed the constitutionality of § 922(g)(8), not § 922(g)(1), Deleon claims that *Bruen* "fundamentally changed" Second Amendment analysis and rendered prior precedent in the area "obsolete."  Def.'s Mot. to Dismiss at 1, 5 (citing *Rahimi*, 61 F.4th at 450–51).  He adds that *Darrington*, like other Second Amendment jurisprudence, is therefore obsolete.  Def.'s Reply at 7.  He insists that, under *Bruen* and *Rahimi*, the Court may not obviate *Bruen*'s textual

---

[12] *See also, e.g.*, *United States v. Otunba*, No. 23-10156, 2024 WL 1333048, at *2 (5th Cir. Mar. 28, 2024) (unpublished); *United States v. Racliff*, No. 22-10409, 2023 WL 5972049, at *1 (5th Cir. Sept. 14, 2023) (unpublished), *cert. denied*, No. 23-6278, 2024 WL 1607828 (U.S. Apr. 15, 2024); *United States v. Johnson*, No. 22-20300, 2023 WL 3431238, at *1 (5th Cir. May 12, 2023) (unpublished); *United States v. Roy*, No. 22-10677, 2023 WL 3073266, at *1 (5th Cir. Apr. 25) (unpublished), *cert. denied*, 144 S.Ct. 234 (2023).

[13] To be sure, in several post-*Bruen* cases (mostly unpublished), multiple Fifth Circuit panels have rejected unpreserved constitutional challenges (they are reviewed under the plain-error standard) to § 922(g)(1), by stating "[g]iven the absence of binding precedent holding that § 922(g)(1) is unconstitutional," or employing similar language—while, at times, mentioning *Darrington*. *Jones*, 88 F.4th at 573–74 (mentioning *Darrington*); *see also, e.g.*, *United States v. Brown*, No. 22-30678, 2024 WL 913370, at *1 (5th Cir. Mar. 4, 2024) (unpublished) (stating "there is no binding precedent explicitly holding that § 922(g)(1) is unconstitutional"); *United States v. Smith*, No. 22-10795, 2023 WL 5814936, at *3 (5th Cir. Sept. 8, 2023) (unpublished) ("[G]iven the lack of binding authority deeming § 922(g)(1) unconstitutional, [the defendant] cannot demonstrate an error that is clear or obvious." (mentioning *Darrington*)), *cert. denied*, 144 S. Ct. 701 (2024).  Such statements evince, understandably, a preference for deciding § 922(g)(1)'s constitutionality, and in turn, *Darrington*'s viability, on an occasion that presents a preserved challenge with a fulsome record.

and historical analysis by relying on the Fifth Circuit's pre-*Bruen* case law.  *Id.*; Def.'s Mot. to

Dismiss at 5.  The Government responds that *Bruen* did not unequivocally overrule the Fifth

Circuit's § 922(g)(1) precedents in part because their holdings that § 922(g)(1) is constitutional

did not rest on means-end scrutiny that *Bruen* disavowed.  Gov't's Resp. at 2–3.  It posits that

*Rahimi*'s statements on which Deleon relies do not apply to the § 922(g)(1) precedents.  Gov't's

Resp. at 3 & n.1.  And, therefore, the Government contends, the Fifth Circuit's pre-*Bruen* §

922(g)(1) precedents foreclose Deleon's Second Amendment challenges.  *Id.* at 2.[14]

       To determine whether the Fifth Circuit's pre-*Bruen* § 922(g)(1) precedents, in particular,

*Darrington* and *Anderson*, remain binding on the lower courts in this Circuit, we may be guided

by the principles governing the appellate "rule of orderliness,"[15] which a three-judge panel

applies to determine whether a prior decision "remains binding precedent" for the panel.

*Gahagan v. United States Citizenship & Immigr. Servs.*, 911 F.3d 298, 301 (5th Cir. 2018).

Under that rule, a three-judge panel must abide by a prior Fifth Circuit decision "absent an

intervening change in the law," *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th

Cir. 2008), such as when the prior "decision is overruled, expressly or implicitly, by either the

United States Supreme Court or by the Fifth Circuit sitting en banc," *Cent. Pines Land*, 274 F.3d

at 893.  "For a Supreme Court decision to change our circuit's law, it must unequivocally

overrule prior precedent."  *Martinelli v. Hearst Newspapers, L.L.C.*, 65 F.4th 231, 234 (5th Cir.

---

[14] Alternatively, the Government disputes Deleon's contention that under the new analytical framework announced in *Bruen*, § 922(g)(1) is unconstitutional.  Gov't's Resp. at 5; *see also id.* at 5–24 (exposition of the Government's arguments on the alternative ground).

[15] *See Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 (5th Cir. 2001) ("While easily confused with traditional *stare decisis*," the rule of orderliness "serves a somewhat different purpose of institutional orderliness."); *Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 880 F.2d 818, 820 (5th Cir. 1989) (Brown, J., dissenting) (The rule of orderliness is the "Holy Rule" under which a prior panel decision is binding on a subsequent panel "as the law of the Medes and Persians which altereth not." (referencing *Daniel* 6:12)).

2023) (cleaned up).  "That standard sets a high bar."  *Ruiz-Perez v. Garland*, 49 F.4th 972, 976 (5th Cir. 2022).  "Neither a mere hint of how the Supreme Court might rule in the future, nor a decision that is merely illuminating with respect to the case before us will permit a subsequent panel to depart from circuit precedent."  *Martinelli*, 65 F.4th at 234 (cleaned up).[16]

Where the application of the rule-of-orderliness principles leads to the conclusion that a prior panel decision remains binding, a subsequent panel "may not unilaterally overrule . . . the precedent," *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663 (5th Cir. 2012); only an en banc court (or the Supreme Court) can, *Montesano v. Seafirst Com. Corp.*, 818 F.2d 423, 426 (5th Cir. 1987) (urging that a prior decision "be overturned en banc").[17]  This is true even when the prior panel's "interpretation of the law appears flawed," *Jacobs*, 548 F.3d at 378, or its treatment of the relevant issue seems "cursory," *United States v. Castro-Alfonso*, 841 F.3d 292, 297–98 (5th Cir. 2016).  And by extension,[18] a district court is likewise bound by the prior panel decision and has no authority to overturn it.  *See F.D.I.C. v. Abraham*, 137 F.3d 264, 270 (5th Cir. 1998) (concluding that "the district court correctly determined that it was constrained by" a prior panel decision and stating that "like the district court, [we] are bound by the holding" in the prior decision); *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789–90, 794 (5th Cir. 2021) (stating,

---

[16] *See also United States v. Vargas*, 35 F.4th 936, 939 (5th Cir. 2022) (If a mere "hint" were enough, "then 'judges would have too much leeway to invalidate caselaw they did not like in the first place.'" (quoting *United States v. Longoria*, 958 F.3d 372, 378 (5th Cir. 2020))).

[17] *See also Tex. Refrigeration Supply, Inc. v. F.D.I.C.*, 953 F.2d 975, 983 n.15 (5th Cir. 1992) ("[O]ne panel of this Court cannot overrule another; only the . . . Supreme Court or our en banc Court can overturn our precedent."); *Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 369 (5th Cir. 2020) (en banc) ("[T]he court sitting en banc may overrule or abrogate a panel's decision if the en banc court concludes that panel opinion's holding was indeed flawed.").

[18] *See Team Contractors, L.L.C. v. Waypoint Nola, L.L.C.*, 976 F.3d 509, 518 (5th Cir. 2020) ("Under this circuit's rule of orderliness, each panel deciding an appeal is bound by Fifth Circuit precedents (as district courts surely are for other reasons).").

in the context of overturning a prior panel decision found to be implicitly overruled by an intervening Supreme Court decision, that the district court "correctly found itself bound by" the prior decision and it "was not free to overturn" it).[19]

So, whether the Fifth Circuit's pre-*Bruen* precedents upholding § 922(g)(1), that is, *Darrington*, *Anderson,* and their progeny, remain binding on this Circuit's lower courts "turns on first- and second-order [feature] questions under the rule of orderliness." *Gahagan*, 911 F.3d at 301. The first feature question is whether *Bruen* implicitly overruled these precedents—insofar as *Bruen* did not mention these precedents. That question, in turn, requires addressing two subsidiary questions: whether these precedents engaged in means-end scrutiny or interest-balancing analysis to uphold § 922(g)(1), and what else, if anything, *Bruen* said that impacts the vitality of these precedents. And the second feature question is whether the Fifth Circuit panel in *Rahimi* implicitly determined that these precedents have been rendered obsolete by *Bruen*. Below, the Court addresses each in turn.

**A.    *Bruen* Did Not Implicitly Overrule the Fifth Circuit's Pre-*Bruen* Precedents Upholding § 922(g)(1).**

**1.    The Fifth Circuit's Pre-*Bruen* § 922(g)(1) Precedents Did Not Use Any Interest-Balancing Analysis.**

*Bruen* rejected an old test (partially) and announced a new test for analyzing Second Amendment challenges to firearms regulations. After *Heller* but before *Bruen*, the Fifth Circuit adopted a two-step test for evaluating whether such as a regulation "comport[s] with the Second Amendment." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, &*

---

[19] *See also Whole Woman's Health v. Cole,* 790 F.3d 563, 580–81 (5th Cir. 2015) (stating by facially invalidating a state statutory provision, the district court ran directly afoul of a prior panel decision that had put the facial challenge to rest and cautioning that "[h]owever much a district court may disagree with an appellate court, a district court is not free to disregard the . . . directly applicable holding of the appellate court").

*Explosives*, 700 F.3d 185, 194 [hereinafter *NRA*] (5th Cir. 2012), *abrogated by Bruen*, 597 U.S. 1.  It was not the first circuit to develop the test; instead, its test was "a version" of the then "prevailing approach" used by its sister circuits.  *Id.*  At the first step of that test, courts determined whether the law regulates conduct that "falls within the scope of the Second Amendment right."  *Id.*  To make that determination, courts looked to "whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee."  *Id.*  If the conduct fell outside the Second Amendment's scope, then the regulation passed constitutional muster, but if it fell within the scope, the courts proceeded to step two of the test where they applied "the appropriate level of means-ends scrutiny," either strict or intermediate, *id.* at 195.

The Supreme Court in *Bruen* said step one of that test was "broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 597 U.S. at 19.  But the Court disavowed step two, the "means-end scrutiny" step, as inconsistent with *Heller* because *Heller* rejected the application of "means-end scrutiny" and any "judge-empowering interest-balancing inquiry" that asks "whether the [challenged] statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests."  *Id.* at 19, 22, 24 (cleaned up). Indeed, in so doing, the Supreme Court expressly cited the Fifth Circuit's decision in *NRA*.  *Id.* at 19 n.4.  The Court then set out a new two-step test.  *Id.* at 24.  Under it, courts must determine whether "the Second Amendment's plain text covers [the] conduct" at issue, and if so, determine whether the challenged regulation "is consistent with this Nation's historical tradition of firearm regulation."  *Id.*  Only if the challenged regulation is so consistent, "may a court conclude that the

. . . conduct falls outside the Second Amendment's unqualified command." *Id.* (internal quotes omitted).

But "the emergence of a new test doesn't necessarily invalidate [an] earlier precedent." *Vincent*, 80 F.4th at 1200. Generally, the Supreme Court's disavowal of a mode of analysis or test operates as an implicit overruling if the earlier panel decision in fact *used* or *relied upon* the mode of analysis or test. *Compare Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018) (stating that an implicit overruling occurs "when the Supreme Court disavows the mode of analysis on which our precedent *relied*" and finding that a Supreme Court decision abrogated a prior panel decision which used an analytical approach that the Court rejected (emphasis added)), *and Hoskins v. Bekins Van Lines*, 343 F.3d 769, 775 (5th Cir. 2003) (holding that "we are no longer bound by our holding" in an earlier decision because a recent Supreme Court decision "overruled the analysis *used* in" the earlier decision (emphasis added)), *with Martinelli*, 65 F.4th at 242 & n.5 (concluding that even assuming that an intervening Supreme Court opinion rejected a certain "presumption," it did not "fundamentally change the focus of the analysis in [a Fifth Circuit precedent]" that had adopted a rule because the precedent "did not explain why it was adopting the . . . rule, let alone announce that it was applying such a presumption").

Other circuits to address whether *Bruen* overruled their pre-*Bruen* panel decisions upholding § 922(g)(1) have also decided the issue based on, at least as a first-order basis, whether the earlier panels used means-end scrutiny analysis that *Bruen* rejected. *Compare Vincent*, 80 F.4th at 1200–02 (holding "*Bruen* did not indisputably and pellucidly abrogate [the Tenth Circuit's] precedential opinion in [*United States v.* ]*McCane*," 573 F.3d 1037 (10th Cir. 2009), pointing out that "[t]his test didn't exist when we decided *McCane*" and that "we relied solely on . . . *Heller*"), *and Dubois*, 94 F.4th at 1292–93 (holding "*Bruen* did not abrogate

[*United States v. ]Rozier*," 598 F.3d 768 (11th Cir. 2010), pointing out that "we have never actually applied the second, means-end-scrutiny step"), *with Range*, 69 F.4th at 100–01 (en banc) (stating *Bruen* abrogated Third Circuit's pre-*Bruen* Second Amendment cases—including, among other cited cases, *Holloway v. Att'y Gen. United States*, 948 F.3d 164 (3d Cir. 2020), which upheld § 922(g)(1) as applied—because those cases "utilize[d] means-end scrutiny").

So, a subsidiary question to our first feature question—whether *Bruen* implicitly overruled *Darrington* and *Anderson*—is whether these precedents applied any means-end scrutiny or interest-balancing analysis that *Bruen* disavowed.  To answer that question, below, the Court examines these and other Fifth Circuit's pre-*Bruen* precedents relating to § 922(g)(1).

The Court begins with *Emerson* because when it comes to the Fifth Circuit's pre-*Bruen* Second Amendment jurisprudence over the past two decades—all roads lead to *Emerson*.  And it demands a thorough discussion.  There, at issue was whether § 922(g)(8)—which bans the possession of firearms by a person subject to a domestic violence restraining order—was unconstitutional under the Second Amendment on its face and as applied to Emerson, the defendant there.  *Emerson*, 270 F.3d at 210, 212, 264 n.66.  The *Emerson* panel held that § 922(g)(8), as applied to Emerson, did not infringe on his individual rights under the Amendment. *Id.* at 260, 264–65.  Subsequently, another panel of the Fifth Circuit interpreted *Emerson*'s analysis of the as-applied challenge as follows: *Emerson* "determined—presumably by applying some form of means-end scrutiny *sub silentio*—that § 922(g)(8) [was] 'narrowly tailored' to the goal of minimizing 'the threat of lawless violence.'"  *United States v. McGinnis*, 956 F.3d 747, 755 (5th Cir. 2020) (quoting *Emerson*, 270 F.3d at 261, 264); *accord Rahimi*, 61 F.4th at 450. So, no one would question that *Bruen* implicitly overruled *Emerson*'s holding that § 922(g)(8) was constitutional as applied.

But there is more to *Emerson*.  There, the panel dedicated "84 pages," *Emerson*, 270 F.3d at 272 (Parker, J., specially concurring); *see also id.* at 218–60, before it even began its analysis of the as-applied challenge, *id.* at 261–65.  Those pages supplied what later became the bedrock of the Fifth Circuit's Second Amendment jurisprudence.  Therein, the panel conducted "an analysis of history and wording of the Second Amendment."  *Id.* at 227.  Following that analysis, the panel held that the Second Amendment "protects the right of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms."  *Id.* at 260.  Seven years later, that holding was "vindicated" in *Heller*.  *McGinnis*, 956 F.3d at 755.

Even more, immediately after so holding, and before addressing the defendant's specific arguments on his as-applied challenge to § 922(g)(8), the *Emerson* panel wrote [hereinafter the *Emerson* Block Quote]:

> Although, as we have held, the Second Amendment does protect individual rights, that does not mean that those rights may never be made subject to any limited, *narrowly tailored specific exceptions or restrictions* for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country.  Indeed, Emerson does not contend, and the district court did not hold, otherwise.  As we have previously noted, *it is clear that felons*, infants and those of unsound mind *may be prohibited from possessing firearms*.  See note 21, *supra*.[note 62]

*Emerson*, 270 F.3d at 261 (emphasis added) (cross-citing footnote 21 and adding footnote 62).  The panel thus pronounced that consistent with the Second Amendment, felons may be prohibited from possessing firearms.

In making that pronouncement, the panel did not engage in any means-end analysis of any form: it did not say, or analyze, that the felon-in-possession ban is narrowly tailored to serve a compelling government interest (strict scrutiny), or substantially related to an important

- 13 -

government interest (intermediate scrutiny), or rationally related to a legitimate government purpose (rational basis scrutiny).  After all, the constitutionality of § 922(g)(1) was not at issue in *Emerson*.  Instead, that pronouncement rested on historical evidence.  Footnote 21 in *Emerson*, which the panel cited in support of that pronouncement (see the *Emerson* Block Quote above), is embedded within the 84-page section of the opinion discussing the panel's textual and historical analysis of the Second Amendment.  *Emerson*, 270 F.3d at 226 n.21.  In that footnote, the panel cited scholarship that said: "Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded . . . felons from possessing firearms[]"; "[n]or does it seem that the Founders considered felons within the common law right to arms or intended to confer any such right upon them[]"; and "violent criminals . . . may be deprived of firearms."  *Id.* (cleaned up) (citations omitted).

So, what is to make of the panel's making that pronouncement in the same breath as it said that the Second Amendment rights are "subject to limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable"?  *Emerson*, 270 F.3d at 261.  Perhaps, the panel meant that the felon-in-possession ban is one such "narrowly tailored . . . reasonable" exception—not that its constitutionality should be subjected to any interest-balancing crucible "on a case-by-case basis."  *Bruen*, 597 U.S. at 23.  Coating the felon-in-possession ban with a "narrowly tailored . . . reasonable" gloss, it appears, was an attempt by the *Emerson* panel to characterize in the then-contemporary constitutional lexicon[20] that which was

---

[20] *See* Mathew S. Nosanchuk, *The Embarrassing Interpretation of the Second Amendment*, 29 N. Ky. L. Rev. 705, 783–93 (2002) (canvassing pre-*Emerson* Supreme Court cases and scholarly articles regarding standards of scrutiny for evaluating constitutional challenges); *cf. also* Tr. of Oral Arg. at 44, *Heller,* 554 U.S. 570 (No. 07-290) ("Well, these various phrases under the different standards that are proposed, 'compelling interest,' 'significant interest,' 'narrowly tailored,' none of them appear in the Constitution. . . . I mean, these standards that apply in the First Amendment just kind of developed over the years as sort of baggage that the First Amendment picked up." (remarks by Chief Justice Roberts)), https://www.supremecourt.gov/oral_arguments/argument_transcript/2007.

already manifest in the nation's historical tradition of firearm regulation—a *post hoc* rationalization of some sort.  To be sure, in further support of that pronouncement, the panel cited to an 1897 Supreme Court opinion for the proposition that "the right to keep and bear arms is, like other rights protected by the Bill of Rights, 'subject to certain *well-recognized* exceptions, arising from the necessities of the case,'" *Emerson*, 270 F.3d at 261 n.62 (emphasis added) (quoting *Robertson v. Baldwin*, 165 U.S. 275 (1897)),[21] and today, following *Bruen*, we would say the Second Amendment rights are "subject to certain *reasonable, well-defined* restrictions," *Bruen*, 597 U.S. at 70 (emphasis added).  While, in hindsight, judging from today's constitutional perspective, *Emerson*'s characterization might have been an unforced error,[22] it is not a ground to say that *Emerson*'s pronouncement—that consistent with the Second Amendment, felons may be prohibited from possessing firearms—has been *sub silentio* overruled by *Bruen* because, the pronouncement itself was not the product of any interest-balancing inquiry made, *sub silentio* or otherwise, by the *Emerson* panel.

---

[21] In *Robertson*, the Supreme Court said:

> [T]he 'Bill of Rights[]' were not intended to lay down any novel principles of government, but simply to embody certain guaranties and immunities which we had inherited from our English ancestors, and which had, from time immemorial, *been subject to certain well-recognized exceptions*, arising from the necessities of the case.  In incorporating these principles into the fundamental law, there was no intention of disregarding *the exceptions, which continued to be recognized as if they had been formally expressed.*  Thus, . . . *the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons*[.]

*Robertson*, 165 U.S. at 281–82 (emphasis added); *cf. Bruen*, 597 U.S. at 53, 55 (acknowledging that antebellum state-court decisions evince a consensus view that "concealed-carry prohibitions were constitutional only if they did not similarly prohibit *open* carry").

[22] *Cf. Cope v. Cogdill*, 3 F.4th 198, 205 n.4 (5th Cir. 2021) ("Even if these precedents are misguided, . . . they are nonetheless binding." (internal quotes omitted)); *Montesano*, 818 F.2d at 426 (Under the rule of orderliness, "in the absence of intervening Supreme Court precedent, one panel cannot overturn another panel, regardless of how wrong the earlier panel decision may seem to be.").

A couple of years later came *Darrington*.  There, a panel of the Fifth Circuit enshrined the *Emerson* pronouncement as the law of this Circuit.  Reproducing the *Emerson* Block Quote, *see ante*, including its "narrowly tailored . . . reasonable" language, the panel wrote that *Emerson* "explained that the individual right it recognized does not preclude the government from prohibiting the possession of firearms by felons."  *Darrington*, 351 F.3d at 633–34 (citing *Emerson*, 270 F.3d at 261).  It observed that "*Emerson* also discusse[d] authority that legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment."  *Id.* at 634 (citing *Emerson*, 270 F.3d at 226 n.21).  It held, "Section 922(g)(1) does not violate the Second Amendment."  *Id.*

In so holding, *Darrington*, like *Emerson* in making the pronouncement regarding the felon-in-possession ban, did not engage in any means-end analysis of any form, even though it quoted *Emerson*'s "narrowly tailored . . . reasonable" language.  And that is significant.  It suggests that *Darrington*, like *Emerson*, accepted, as given, the felon-in-possession ban as a "narrowly tailored . . . reasonable" exception that was already manifest in the nation's historical tradition of firearm regulation and understood that the ban's constitutionality need not be subjected to any case-by-case interest-balancing exercise.[23]

---

[23] Five months after *Darrington* was decided, another panel of the Fifth Circuit addressed a facial challenge to § 922(g)(1).  *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004).  Relying on *Emerson*'s "limited narrowly tailored. . . reasonable" language, the *Everist* panel stated that "[i]t is not inconsistent with the Second Amendment to limit the ability of convicted felons to keep and possess firearms."  *Id.*  Reasoning that "a felon has shown manifest disregard for the rights of others," the panel said that he "may not justly complain of the limitation on his liberty when his possession of firearms would otherwise *threaten the security of his fellow citizens*," and it concluded that "§ 922(g)(1) represents a limited and narrowly tailored exception to the freedom to possess firearms, *reasonable in its purposes*." *Id.* (emphasis added).  It rejected the challenge.  In a footnote, the panel also said, "[w]e need not decide whether the Second Amendment's boundaries are properly defined through strict scrutiny analysis."  *Id.* at 519 n.1.

- 16 -

Post-*Heller*, but before its adoption of the now-abandoned two-step test in *NRA*, the Fifth

Circuit once again addressed § 922(g)(1)'s constitutionality, but, this time, it did so in view of

*Heller*.  *Anderson*, 559 F.3d at 352.  Pointing out that the *Heller* Court stated that "'nothing in

our opinion should be taken to cast doubt on longstanding prohibitions on the possession of

firearms by felons'"—which later came to be known as *Heller*'s assurance (one of several

assurances)[24]—the *Anderson* panel explained that "*Heller* provides no basis for reconsidering

*Darrington*."  *Id.* at 352 & n.6 (cleaned up) (quoting *Heller*, 554 U.S. at 626).  It "therefore

reaffirm[ed] *Darrington* and the constitutionality of § 922(g)[(1)]."[25]  *Id.* at 352.  It provided no

further elaboration or analysis.  Importantly, *Anderson*, like *Darrington*, did not engage in any

means-end analysis of any form.

---

To the extent that *Everist* could be understood as having applied some form of means-end scrutiny—particularly, in view of its mentions that a felon's possession of firearms "threaten[s] the security of his fellow citizens" and that § 922(g)(1) is "reasonable in its purposes"—*Everist* did not infect *Darrington* and *Anderson* (discussed *infra*), none of which made such mentions.  And, although *Everist* was decided after *Darrington*, *Everist* did not cite to *Darrington*; *Everist* thus appears to be a case of "ships passing in the night." *Grabowski v. Jackson Cnty. Pub. Defs. Off.*, 47 F.3d 1386, 1400 n.4 (5th Cir. 1995) (Smith, J., concurring in part and dissenting in part), *vacated for reh'g en banc*, *id.* at 1403, *district court judgment aff'd*, 79 F.3d 478 (5th Cir. 1996) (en banc)); *cf. United States v. Puckett*, 505 F.3d 377, 385–86 (5th Cir. 2007) (stating "[a] handful of this court's cases, unfortunately, are inconsistent" with an earlier precedent, and therefore, they are "not controlling").  Moreover, *Anderson*, decided five years after *Everist*, did not cite to or rely on *Everist*.  So, at least for purposes of § 922(g)(1), *Everist* fell by the wayside.

[24] *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010) (plurality opinion) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill' . . . .  We repeat those assurances here." (quoting *Heller*, 554 U.S. at 626–627)).

[25] Although the defendant in *Anderson* challenged his conviction under § 922(g)(1), *see Anderson*, 559 F.3d at 352, 354; *see also* Br. of Appellant, *Anderson*, 559 F.3d 348 (No. 08-40160), 2008 WL 6122747 (arguing "§ 922(g)(1) is an unconstitutional infringement on his fundamental Second Amendment right to keep and bear arms" (Ground of Error #1)), the panel's Second Amendment discussion references "§ 922(g)," *Anderson*, 559 F.3d at 352.  In *McGinnis*, the Fifth Circuit clarified that the *Anderson* panel meant to write "§ 922(g)(1)" instead.  *See McGinnis*, 956 F.3d at 755 (noting that in *Anderson*, "we explicitly held that a constitutional challenge to § 922(g)(1)—the federal statute barring convicted felons from possessing firearms—was foreclosed by our pre-*Heller* but post-*Emerson* precedent").

After it adopted the *NRA* test, the Fifth Circuit again addressed a Second Amendment challenge to § 922(g)(1) in *United States v. Massey*, 849 F.3d 262 (5th Cir. 2017).  There, the defendant brought an as-applied challenge to his § 922(g)(1) conviction, *id.* at 263–65,[26] and asked the court to reexamine the constitutionality of § 922(g)(1) under the *NRA* test, *id.* at 265.[27] The *Massey* panel declined that invitation.  Repeating *Heller*'s assurance, it explained that the Supreme Court "specifically preserved" the constitutionality of the felon-in-possession statute. *Id.* (citing *Heller*, 554 U.S. at 626).  Pointing out that in *Anderson*, the court reaffirmed the constitutionality of § 922(g)(1),[28] the panel declined to revisit *Anderson*'s holding on the rule-of-orderliness ground.  *Id.*  It held that the defendant's conviction did not violate the Second Amendment.  *Id.*

Those are the key (insofar as the rule of orderliness is concerned) pre-*Bruen* Fifth Circuit precedents regarding the constitutionality of § 922(g)(1) under the Second Amendment.  To recap, in holding that § 922(g)(1) is constitutional, *Darrington*—like *Emerson* in pronouncing that consistent with the Second Amendment, felons may be prohibited from possessing firearms—did not rely on, or engage in, any means-end or interest-balancing inquiry of any form.  Nor did *Anderson* in reaffirming *Darrington* and § 922(g)(1)'s constitutionality, post-*Heller*.  Consequently, for purposes of *Darrington*, *Anderson*, and their progeny, neither *Bruen*'s

---

[26] *See also* Br. for Appellant, *Massey*, 849 F.3d 262 (No. 16-40041), 2016 WL 2897802, at *39–*40 (arguing "[t]he District Court erred in denying Appellant's Motion to Dismiss Indictment based on his challenge to Sec. 922(g)(1) as being unconstitutional as it applied to him, and in general, as it applies to all non-violent felons who are being denied the right to bear arms under the Second Amendment").

[27] *See also* Br. for Appellant, *Massey,* 2016 WL 2897802, at *55 (arguing "[f]ollowing the two step analysis [in *NRA*], this court should find that the total abridgement of Massey's right to bear arms is of such a nature that resort to analyzing the second prong of [*NRA*] is required").

[28] Here too, as in *Anderson*, the Second Amendment challenge was directed to § 922(g)(1), though the panel's discussion of the challenge references "§ 922(g)."  *Massey*, 849 F.3d at 265.

repudiation of the means-end scrutiny, nor its announcement of the new analytical framework for evaluating Second Amendment challenges, constitutes "an intervening change in the law" that implicitly overrules these precedents.  *Compare Stokes*, *supra*, 887 F.3d at 204, *and Hoskins*, *supra*, 343 F.3d at 775, *with Martinelli*, *supra*, 65 F.4th at 242 & n.5.

## 2. *Bruen*'s Own Words Signal that the Fifth Circuit's Pre-*Bruen* § 922(g)(1) Precedents Remain Good Law.

Having explained that *Darrington* and *Anderson* did not engage in any means-end exercise in upholding § 922(g)(1), the Court turns to whether their holdings have "fallen unequivocally out of step" with *Bruen*.  *In re Bonvillian Marine Serv.*, 19 F.4th at 792; *Gahagan*, 911 F.3d at 302 (A "Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion establishes a rule of law inconsistent with that precedent." (cleaned up)).  In two respects, *Bruen* signals that they have not.

 First, recall *Heller*'s assurance—that "nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" and that regulatory measures prohibiting such possessions are "presumptively lawful."  *Heller*, 554 U.S. at 626–27, 627 n.26; *see also McDonald*, *supra*, 561 U.S. at 786 ("We repeat those assurances here.").  Also recall that relying on *Heller*'s assurance, the panel in *Anderson* reaffirmed § 922(g)(1)'s constitutionality, and later, the panel in *Massey*, declined to revisit *Anderson* and § 922(g)(1)'s constitutionality.  *See* Part III(A)(1), *ante*.

*Bruen* made clear that its holding was "[i]n keeping with *Heller*."  *Bruen*, 597 U.S. at 17.  And six of the nine Justices made clear that *Bruen* was not casting any doubt on *Heller*'s assurance.  *Id.* at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm[.] . . . Nor have we disturbed anything that we said in *Heller* or *McDonald*."); *id.* at 80–81 (Kavanaugh, J, concurring, joined by Roberts, C.J.) (approvingly

reproducing *Heller*'s assurance and reminding that Justice Alito "reiterated [the assurance] . . . in the principal opinion in *McDonald*" (quoting *Heller*, 554 U.S. at 626–27, 627 n.26, and citing *McDonald*, 561 U.S. at 786)); *id.* at 129 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.) ("Like Justice K[avanaugh], I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding." (citing *Heller*, 554 U.S. at 626–27, 627 n.26)).

Second, the *Bruen* majority said, "nothing in [its] analysis should be interpreted to suggest the unconstitutionality of the . . . 'shall-issue' licensing regimes," which "often require applicants to undergo a background check." *Bruen*, 597 U.S. at 38 n.9; *see also Rahimi*, 61 F.4th at 451 n.5 (acknowledging that the *Bruen* Court "blessed the general concept of shall-issue regimes"). The majority's preservation of the "shall-issue" regimes "could support an inference that the Second Amendment doesn't entitle felons to possess firearms." *Vincent*, 80 F.4th at 1202.

Thus, "[f]ar from unequivocally directing" the Fifth Circuit to overrule *Darrington* and *Anderson*, *see In re Henry*, 944 F.3d 587, 591 (5th Cir. 2019), *Bruen* signals that these precedents remain good law, *cf. Tech. Automation Servs. Corp. v. Liberty Surplus Ins.*, 673 F.3d 399, 407 (5th Cir. 2012) (unwilling to say that a Supreme Court decision overruled *sub silentio* a Fifth Circuit precedent "especially when the Supreme Court repeatedly emphasized that [its decision] had very limited application"); *Jones v. Michaels Stores, Inc.*, 991 F.3d 614, 616 (5th Cir. 2021) (concluding because an earlier panel had decided an issue, "the Supreme Court's later abstaining from deciding that issue cannot overrule our precedent").

In sum, the Court concludes that *Bruen* did not unequivocally, *sub silentio* overrule *Darrington* and *Anderson* because these precedents did not utilize any means-end or interest-balancing analysis in upholding § 922(g)(1)'s constitutionality, six *Bruen* Justices reassured

*Heller*'s assurance, the *Bruen* majority said that its holding is in keeping with *Heller*, and the majority preserved the "shall-issue" regimes and their background checks.  *See Gruver v. La. Bd. of Supervisors*, 959 F.3d 178, 181 (5th Cir. 2020) (explaining that, under the rule of orderliness, only an "unequivocal" change in law from the Supreme Court can override one of our precedents).

**B.**    ***Rahimi* Left Undisturbed the Fifth Circuit's Pre-*Bruen* Precedents Upholding § 922(g)(1).**

That brings us to what *Rahimi* said or might have implied about the post-*Bruen* state of the Fifth Circuit's pre-*Bruen* Second Amendment jurisprudence—particularly, as relevant here, its § 922(g)(1) precedents (*Darrington* and *Anderson*)—as Deleon relies on *Rahimi*'s words.  Def.'s Mot. to Dismiss at 1, 5; Def.'s Reply at 5–7.  And, what the *Rahimi* panel said or implied matters.  "[T]he determination whether a given precedent has been abrogated is itself a determination subject to the rule of orderliness."  *Stokes*, 887 F.3d at 205; *see also Mullis v. Lumpkin*, 47 F.4th 380, 391 (5th Cir. 2022) ("When a panel of our court decides the meaning of a Supreme Court opinion, it binds later panels to that interpretation."); *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 400 n.28 (5th Cir. 2022) ("The rule of orderliness applies as equally to a panel's implicit reasoning as it does to its express holdings.").

In *Rahimi*, the panel began its rule-of-orderliness discussion by noting that in *Emerson*, the court concluded that § 922(g)(8) was constitutional as applied to the defendant there and that it did so "presumably by applying some form of means-end scrutiny *sub silentio*."  *Rahimi*, 61 F.4th at 450 (citing *McGinnis*, 956 F.3d at 755).  It also noted that in *McGinnis*, the court upheld[29] § 922(g)(8) using *NRA*'s two-step test.  *Id.*  The panel then pointed out that in *Bruen*,

---

[29] The *McGinnis* panel held that § 922(g)(8) was constitutional on its face, noting that its "holding . . . d[id] not foreclose the possibility of a successful as-applied challenge to § 922(g)(8)."  *McGinnis*, 956 F.3d at 759.

the Supreme Court "expressly repudiated the circuit courts' means-end scrutiny—the second step embodied in *Emerson* and applied in *McGinnis*." *Id.*  It concluded: "To the extent that the [Supreme] Court did not overtly overrule *Emerson* and *McGinnis*—it did not cite those cases but discussed other circuits' similar precedent—*Bruen* clearly fundamentally changed our analysis of laws that implicate the Second Amendment, *rendering our prior precedent obsolete*." *Id.* at 450–51 (emphasis added) (cleaned up).

That conclusion's reference to "our prior precedent" in light of *Rahimi*'s statement elsewhere that "*Bruen* requires us to re-evaluate *our Second Amendment jurisprudence*," *Rahimi*, 61 F.4th at 448 (emphasis added), has led to some confusion among the lower courts in this Circuit: whether *Rahimi* "repudiate[d] . . . some (or perhaps *all*) pre-*Bruen* Fifth Circuit Second Amendment jurisprudence." *United States v. Cartlidge*, No. 5-21-CR-520-OLG, 2023 WL 6368327, at *2 (W.D. Tex. Sept. 7) (emphasis added), *R & R adopted*, 2023 WL 7190729 (W.D. Tex. Oct. 30, 2023).  And, although at issue in *Rahimi* was § 922(g)(8)'s constitutionality, some courts have read *Rahimi* to say that *Bruen* rendered obsolete this Circuit's precedents regarding other subcomponents of § 922(g), including those regarding § 922(g)(1).[30]  Deleon is no different.  He reads *Rahimi* to say that *Darrington*, like other Second Amendment jurisprudence, is obsolete.  Def.'s Reply at 7; *see also id.* at 5 ("The language [in *Rahimi*] is not qualified;

---

[30] *See, e.g.*, *United States v. Flores*, No. SA-18-CR-00064-OLG, 2023 WL 5282384, *3 (W.D. Tex. Aug. 16) ("[T]he Fifth Circuit in *Rahimi* indisputably stated . . . that *all* pre-*Bruen* precedent on the Second Amendment is obsolete[.]" (emphasis added)), *R & R adopted*, 2023 WL 7190729 (W.D. Tex. Oct. 30, 2023); *United States v. Hernandez*, 678 F. Supp. 3d 850, 853 (N.D. Tex. 2023) (*Rahimi* "left little room for precedent relating to 18 U.S.C. § 922(g)(1) to nonetheless survive."); *United States v. Thenstead*, No. 3:22-CR-00359-E, 2023 WL 8850766, at *3 (N.D. Tex. Dec. 20, 2023) (same); *see also, e.g.*, *United States v. Connelly*, 668 F. Supp. 3d 662, 669 (W.D. Tex. 2023) (reading *Rahimi* as "recogniz[ing] the abrogation of" the Fifth Circuit's pre-*Bruen* precedents upholding of § 922(g)(3), "though [*Rahimi*] did not mention [these precedents] specifically").

*Bruen* rendered all Fifth Circuit Second Amendment jurisprudence obsolete." (citing *Rahimi*, 61 F.4th at 450–51)).

What is more, in that conclusion, *Rahimi*'s mention of "*Emerson*" without any qualification begs the question whether *Rahimi* overruled *Emerson* in its *entirety* (if so, that would include *Emerson*'s pronouncement that the felon-in-possession ban is constitutional, which was the foundation underlying *Darrington*'s holding that § 922(g)(1) is constitutional) or *in part* (that is, the portion of *Emerson* that upheld § 922(g)(8), whose constitutionality was at issue in *Rahimi*).   And, if *Rahimi* overruled *Emerson* in its entirety, that overruling could potentially undermine *Darrington*'s vitality, as one court has read *Rahimi* as follows: "*Bruen* rendered *Emerson*—and, in turn, *Darrington* (and its progeny)—'obsolete,' albeit implicitly." *United States v. Leblanc*, No. CR 23-00045-BAJ-RLB, --- F. Supp. 3d ----, 2023 WL 8756694, at *4 (M.D. La. Dec. 19, 2023).   This reading mirrors Deleon's.   He points out that *Rahimi* identified *Emerson* as "obsolete," Def.'s Reply to Gov't's Suppl. Br. at 2, ECF No. 36, and that *Darrington*'s Second Amendment analysis rested on *Emerson*, Def.'s Reply at 6.   Therefore, he argues, *Darrington*, like *Emerson*, is obsolete. *Id.* at 7.

Thus, Deleon's arguments present two questions for purposes assessing what, if any, impact *Rahimi* has on the Fifth Circuit's pre-*Bruen* § 922(g)(1) precedents, in particular, *Darrington*, and *Anderson*.   First, did *Rahimi* implicitly say that these § 922(g)(1) precedents are rendered obsolete by *Bruen*?   Second, did *Rahimi* mean that *Emerson* is rendered obsolete in its entirety or in part?[31]

---

[31] The Government does not provide a fulsome analysis on what, if any, impact *Rahimi* has on the Fifth Circuit's pre-*Bruen* § 922(g)(1) precedents.   In a footnote, it suggests only that *Rahimi*'s statements on which Deleon relies do not apply to the § 922(g)(1) precedents.   Gov't's Resp. at 3 & n.1.

To be sure, *Rahimi* did not expressly mention *Darrington* or *Anderson*; nor was §
922(g)(1)'s constitutionality at issue in that case.  So, at base, whether *Rahimi* implied anything
about the post-*Bruen* vitality of *Darrington* or *Anderson* is an interpretive exercise.  "[W]ords in
a judicial opinion — as opposed to a statute — should not be scrutinized with a gimlet
eye**.**"  *United States v. Torres*, 789 F. App'x 655, 658 (9th Cir. 2020) (Lee, J., concurring); *see
also Kanter v. Barr*, 919 F.3d 437, 453–54 (7th Cir. 2019) (Barrett, J., dissenting) ("[J]udicial
opinions are not statutes, and we don't dissect them word-by-word as if they were." (citing
*United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010))); *cf. also Daniels*, 77 F.4th at 342
("[W]e cannot read too much into the Supreme Court's chosen epithet.").  Instead, "general
expressions" in judicial opinions "must be read in light of the subject under consideration."
*Skoien*, 614 F.3d at 640.

Turning to the first question, when it comes to the Fifth Circuit's Second Amendment
precedents regarding various subcomponents of § 922(g)—not all precedents are created equal.
For example, the precedent upholding § 922(g)(5)(A) (which prevents illegal aliens from
possessing firearms) did not use any interest-balancing analysis.  *See United States v. Portillo-
Munoz*, 643 F.3d 437, 442 (5th Cir. 2011) (holding "section 922(g)(5) is constitutional"
reasoning that "the phrase 'the people' in the Second Amendment . . . does not include aliens
illegally in the United States"); *see also United States v. Sitladeen*, 64 F.4th 978, 983, 985, 987
(8th Cir. 2023) (stating, while concluding that the Eighth Circuit's § 922(g)(5)(A) precedent
remains undisturbed by *Bruen*, that "we did not reach our conclusion that § 922(g)(5)(A) is
constitutional by engaging in means-end scrutiny or some other interest-balancing exercise," and
"we cited favorably the Fifth Circuit's decision in . . . *Portillo-Munoz*").  An obvious contrary

example is the precedents upholding § 922(g)(8), *i.e.*, *Emerson* and *McGinnis*, which, as *Rahimi* explained, applied means-end scrutiny.

And precisely because *Emerson* and *McGinnis* applied that test to uphold § 922(g)(8), the *Rahimi* panel concluded that *Bruen* "render[ed] our prior precedent obsolete." *Rahimi*, 61 F.4th at 450–51. So, "read in light of the subject under consideration," *Skoien*, 614 F.3d at 640, *Rahimi*'s reference to "our prior precedent" in the conclusion of its rule-of-orderliness discussion is to *McGinnis* and *Emerson*. Likewise, in light of its rule-of-orderliness inquiry (whether means-end scrutiny was applied) and its statement that "*Bruen* clearly fundamentally changed our analysis of laws that implicate the Second Amendment," *Rahimi*, 61 F.4th at 450 (cleaned up), *Rahimi*'s earlier statement that "*Bruen* requires us to re-evaluate *our Second Amendment jurisprudence*," *id.* at 448 (emphasis added), refers specifically to *McGinnis* and *Emerson*, and generally to any Fifth Circuit precedent that in assessing a Second Amendment challenge, applied the *NRA* test or some form of interest-balancing analysis, *see Smith*, 2023 WL 5814936, at *3 (5th Cir.) (reading *Rahimi* as stating "'*Bruen* clearly fundamentally changed our analysis of laws that implicate the Second Amendment' and rendered our previously adopted two-step framework precedent 'obsolete.'" (brackets omitted) (quoting *Rahimi*, 61 F.4th at 450–61)). So, those words by *Rahimi* do not implicate *Darrington* or *Anderson* because, as discussed fully above, *see* Part III(A)(1), *ante*, they did not engage in any form of interest-balancing exercise.

Conversely, broadly reading *Rahimi* to implicitly state that *Bruen* rendered *Darrington* and *Anderson* "obsolete" would render that statement a *dictum* because, after all, § 922(g)(1)'s constitutionality was not at issue in *Rahimi*. As such, that statement would not bind a subsequent panel, or by extension, the lower courts. *See Netsphere, Inc. v. Baron*, 799 F.3d 327, 333 (5th Cir. 2015) ("While it is well-established in this circuit that one panel of this Court may not

overrule another, that rule does not apply to dicta." (cleaned up)); *accord Martinelli*, 65 F.4th at 240 (concluding that a later panel's discussion of a Supreme Court decision "is dicta to which the rule of orderliness does not apply").

Moreover, such broad reading of *Rahimi* is particularly problematic insofar as *Anderson* is concerned.  In addressing what *Bruen* meant by its repeated references to "law-abiding" citizens, the *Rahimi* panel expressly relied on *Heller*'s assurance to conclude that Rahimi "remained among 'the people,'" because he "did not fall into any such group" as the mentally ill and felons,[32] "groups that have historically been stripped of their Second Amendment rights, i.e., groups whose disarmament the Founders 'presumptively' tolerated or would have tolerated," *Rahimi*, 61 F.4th at 452 (citing *Heller*, 554 U.S. at 626–27, 627 n.26).[33]  As discussed above, the *Anderson* panel relied on the same assurance to reaffirm § 922(g)(1)'s constitutionality. *Anderson*, 559 F.3d at 352 & n.6.  So, to read *Rahimi* as saying that *Bruen* abrogated *Anderson*, for example, would undermine *Rahimi*'s own analysis.

Turning to the second question (whether *Rahimi* meant that *Emerson* is rendered obsolete in its entirety or in part), recall from our earlier discussion, *see* Part III(A)(1), *ante*, that there are three aspects to *Emerson*: (a) its first feature holding that the Second Amendment guarantees an individual right to keep and bear arms; (b) its second feature holding that § 922(g)(8) was constitutional as applied there; and (c) its pronouncement that consistent with the Second Amendment, felons may be prohibited from possessing firearms, which, as mentioned, laid the foundation for *Darrington*'s holding that § 922(g)(1) is constitutional.

---

[32] *See also United States v. Kersee*, 86 F.4th 1095, 1101 (5th Cir. 2023) (Ho, J., concurring) ("Rahimi 'was suspected of other criminal conduct,' but he 'was not a convicted felon.'" (quoting *Rahimi*, 61 F.4th at 452)).

[33] *See also Daniels*, 77 F.4th at 343 (repeating *Rahimi*'s discussion).

To read *Rahimi* as saying that *Bruen* rendered obsolete *Emerson* in its entirety leads to an untenable reading of *Bruen* itself.  For one, such a reading would also mean that *Bruen* rejected *Emerson*'s pronouncement that consistent with the Second Amendment, felons may be prohibited from possessing firearms, but that pronouncement is, in essence, the same as *Heller*'s assurance, which, as we have seen, six *Bruen* Justices reassured.  For another, *Bruen* said, by the way of *Heller*, that the Second Amendment protects the right of a "citizen to possess a handgun in the home," and then held, "consistent with *Heller*," that the Amendment protects "an individual's right to carry a handgun . . . outside the home."  *Bruen*, 597 U.S. at 8.  And *Emerson* held the same in its first feature holding (its individual-rights interpretation of the Second Amendment).  *Emerson*, 270 F.3d at 260, 264–65.  So, to read *Rahimi* to imply that *Bruen* rendered *all* of *Emerson* (that would include the first feature holding) obsolete is to say that *Bruen* rejected a holding that *Bruen* itself made: *Bruen* abrogated itself!

The better reading of *Rahimi*, it seems, is that it partially overruled *Emerson*—only as to *Emerson*'s second feature holding that § 922(g)(8) is constitutional as applied and its "narrowly tailored" analysis therefor.  *Emerson*'s second feature holding also meant that "§ 922(g)(8) is not facially unconstitutional."  *McGinnis*, 956 F.3d at 753 (referencing *Emerson*).  And, at issue in *Rahimi* was whether § 922(g)(8) was facially constitutional, and the panel ultimately held it was not.  So, for purposes of the rule of orderliness, it needed to address whether *Emerson*'s second feature holding survived *Bruen*.  In fact, at the onset of its rule-of-orderliness discussion, *Rahimi* made that clear: "In *Emerson*, we held that the Second Amendment guarantees an individual right to keep and bear arms—the first circuit expressly to do so.  *But* we also concluded that § 922(g)(8) was constitutional as applied to the defendant there."  *Rahimi*, 61 F.4th at 450

(emphasis added) (citations omitted).  It had no need to, and it did not, address *Bruen*'s impact on the other aspects of *Emerson*.

Thus read, then, *Rahimi* left undisturbed the remaining aspects of *Emerson*, including its pronouncement about the felon-in-possession ban.  *Cf. Campos v. United States*, 888 F.3d 724, 737–38 (5th Cir. 2018) ("We leave that much of *Sutton* [*i.e.*, a prior panel opinion] undisturbed because under this Circuit's rule of orderliness, a prior opinion remains binding except to the extent of the Supreme Court's change in the law."); *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001) ("Thus, the first, and ultimately only, question we face is the degree to which *Stamps* retains precedential value after the Supreme Court's decision in *Lohr*."); *Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 856 n.2 (5th Cir. 2022) (concluding that "[o]ur rule of orderliness requires us to follow the panel opinion except for the portions of it" for which the Supreme Court reversed its judgment).

Finally, even assuming arguendo, as a matter of strict formalism, that *Rahimi* can be read as saying that *Bruen* rendered obsolete *all* of *Emerson*, laying *Darrington*'s foundation in ruins—that reading still leaves *Anderson* alive and kicking.  Recall, in *Anderson*, the panel reaffirmed § 922(g)(1)'s constitutionality relying on *Heller*'s assurance—a basis independent of *Darrington*.  *Anderson*, 559 F.3d at 352; *see also, e.g.*, *McCane*, 573 F.3d at 1047 (reading *Anderson* as "rejecting the argument that § 922(g)[(1)] is unconstitutional in light of *Heller*"); *United States v. Moore*, 666 F.3d 313, 317 (4th Cir. 2012) (reading *Anderson* as "flatly rejecting Second Amendment challenge to § 922(g)(1) based on *Heller*").  In this respect, *Anderson* is like the Tenth Circuit's pre-*Bruen* precedent, *McCane*, which relied on *Heller*'s assurance to reject a constitutional challenge to § 922(g)(1).  *McCane*, 573 F.3d at 1047 (quoting *Heller*, 554 U.S. at 626–27).  And, as mentioned *supra*, a Tenth Circuit panel has recently concluded that *McCane*

remains binding, reasoning that "[t]his test didn't exist when we decided *McCane*" and that "we relied solely on . . . *Heller*." *Vincent*, 80 F.4th at 1200–02. *Anderson*, like *McCane*, remains binding—even if *Bruen* rendered *Emerson* obsolete in its entirety.

In sum, the Court concludes that *Rahimi* left undisturbed *Darrington*, *Anderson*, and their progeny.[34] That conclusion is bolstered by two Fifth Circuit panels' reading of *Rahimi*. In two unpublished cases addressing unpreserved challenges to § 922(g)(1), the panels have pointedly said that *Rahimi* does not dictate that § 922(g)(1) is unconstitutional under *Bruen*. *See United States v. Washington*, No. 22-10574, 2023 WL 5275013, at *1 (5th Cir. Aug. 16, 2023) (unpublished) ("*Rahimi* suggests that *Bruen*'s logic may not extend to this provision [*i.e.*, § 922(g)(1)]." (citing *Darrington* in passing)); *United States v. Cuevas*, No. 23-60294, 2024 WL 303255, at *2 (5th Cir. Jan. 26, 2024) (unpublished) (In *Rahimi*, "[t]his court extended *Bruen* to a preserved . . . challenge to § 922(g)(8) . . . . However, neither *Bruen* nor *Rahimi* dictates such a result for Section 922(g)(1)." (cleaned up)).[35] If *Rahimi* could be read this way, as these panels have, surely *Rahimi* could not be read to mean that *Bruen* rendered *Darrington* and *Anderson* (which upheld § 922(g)(1)) "obsolete."

\*     \*     \*

At the end of this time-travel from 2001 with *Emerson* to 2023 with *Rahimi*, the Court concludes that *Darrington* and *Anderson*, which upheld § 922(g)(1)'s constitutionality under the

---

[34] *See United States v. Brown*, No. 3:18-CR-117-KHJ-LGI, --- F. Supp. 3d ----, 2024 WL 1076250 at *3 n.6 (S.D. Miss. Mar. 12, 2024) ("Most district courts have concluded that the § 922(g)(1) precedents are not obsolete under *Rahimi*." (collecting cases)).

[35] For comparison, in other cases addressing unpreserved challenges, the panels generally say that *it is not clear* that *Bruen* dictates that § 922(g)(1) is unconstitutional. *See United States v. Garza*, No. 22-51021, 2023 WL 4044442, at *1 (5th Cir. June 15, 2023) (unpublished) ("[T]here is no binding precedent explicitly holding that § 922(g)(1) is unconstitutional on its face or as applied[,] and . . . *it is not clear* that either *Bruen* or *Rahimi* dictate such a result." (emphasis added)); *see also* note 12, *supra* (collecting similar cases).

Second Amendment, together with their progeny, remain binding on this Court.  It is not for this Court to ignore them even if a *Bruen* analysis could lead to a determination that § 922(g)(1) is unconstitutional; the prerogative to inter these precedents, if necessary, rests with the Fifth Circuit (or the Supreme Court).  *See Abraham*, *supra*, 137 F.3d at 270 (concluding that "the district court correctly determined that it was constrained by" a prior panel decision and stating that "like the district court, [we] are bound by the holding" in the prior decision); *In re Bonvillian Marine Serv.*, *supra*, 19 F.4th at 789–90, 794 (stating, in the context of overturning a prior panel decision found to be implicitly overruled by an intervening Supreme Court decision, that the district court "correctly found itself bound by" the prior decision and it "was not free to overturn" it); *see also Cole*, *supra*, 790 F.3d 563, 580–81.[36]  Until the Fifth Circuit speaks, "we are hemmed in."  *Newman*, 23 F.4th at 400.

**C.    The Court's Rulings on Defendant's Constitutional Challenges to § 922(g)(1)**

Having determined that this Court is bound by *Darrington*, *Anderson*, and their progeny, the Court turns to Deleon's facial and as-applied Second Amendment challenges to § 922(g)(1). According to the Government, Deleon had several prior felony convictions, including a conviction for burglary, a conviction for possession of marijuana, and a conviction for possessing a weapon as a prohibited person/felon, each of which serves as a predicate felony conviction for the § 922(g)(1) charge against Deleon.  Gov't Resp. at 1, 11, 24.[37]

---

[36] *Cf. Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

[37] As mentioned, for purposes of the instant motion, Deleon concedes that each of these qualifies as a predicate felony conviction for his prosecution under § 922(g)(1).  *See* note 7, *supra*.

Specifically, Deleon says that burglary is his most serious prior offense (based on counsel arguments at a hearing on this motion, it appears that this conviction was for burglary of a home), Def.'s Reply at 20, and that by most definitions, burglary and simple marijuana possession are not dangerous or violent crimes, *id.* at 30.[38]  So, he argues, his predicate felony offenses do not suggest that he is dangerous, and therefore contends that even if the Court determines that § 922(g)(1) is not facially unconstitutional, the statute violates the Second Amendment as applied to him.  Def.'s Mot. to Dismiss at 26, 28.  For support, Deleon relies on *Range*, the Third Circuit's en banc decision.  *See Range*, 69 F.4th at 98–99, 106 (holding § 922(g)(1) unconstitutional as applied to a felon convicted of making a false statement on an application for food stamps); *but see Jackson*, 69 F.4th at 498, 502, 506 (denying an as-applied challenge to § 922((g)(1) by defendant who had two convictions for sale of a controlled substance).

In *Darrington* (there, the predicate felony was a prior conviction for burglary of a building[39]) and *Anderson* (there, the predicate felony was a conviction for assault of a public servant[40]), the Fifth Circuit did not distinguish between a facial challenge and an as-applied challenge[41]—suggesting that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)."  *Jackson*, 69 F.4th at 502.  Another panel of the Fifth Circuit

---

[38] Deleon nudges the Court to look to the United States Codes and the Sentencing Guidelines to determine whether his prior convictions were for dangerous or violent crimes.  Def.'s Reply at 30 n.24.

[39] Br. of Appellant, *Darrington*, 351 F.3d 632 (No. 03-20052), 2003 WL 23529000, at *6; Br. of Pl.-Appellee, *Darrington*, 2003 WL 23528756, at *3.

[40] *Anderson*, 559 F.3d at 352; United States' Resp. to Def.'s Mot. in Limine, *United States v. Anderson*, No. 4:07-CR-82 (E.D. Tex.), 2007 WL 6857774.

[41] *See Freedom Path, Inc. v. IRS.*, 913 F.3d 503, 508 (5th Cir. 2019) ("A facial challenge to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual." (cleaned up)).

has cited *Darrington* to say "[p]rior to *Heller*, this circuit had already . . . determined that criminal prohibitions on felons (violent or nonviolent) possessing firearms did not violate that right." *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (citing, among other cases, *Darrington*, 351 F.3d at 633–64).[42] And, in *Massey*, discussed *supra*, the Fifth Circuit rejected, in view of *Anderson* and *Heller*, an as-applied challenge to § 922(g)(1) by a felon who had a prior conviction of burglary of a habitation. *Massey*, 849 F.3d at 263–65; note 26, *supra*.

In light of these pre-*Bruen* Fifth Circuit decisions—and because *Darrington*, *Anderson*, and their progeny remain binding on this Court—the Court concludes that Deleon's facial and as-applied Second Amendment challenges to § 922(g)(1) should be denied and therefore, his motion to dismiss should be denied as to these grounds.[43]

---

[42] *See also United States v. Powell*, 574 F. App'x 390, 397 (5th Cir. 2014) (rejecting defendant's challenge to § 922(g)(1) based on the argument that he has never been convicted of a firearm offense or of physical violence (citing *Anderson*, 559 F.3d at 352, and *Darrington*, 351 F.3d at 633–34)).

[43] Several lower courts in this Circuit similarly rejected challenges to § 922(g)(1) relying on the Fifth Circuit's pre-*Bruen* precedents upholding § 922(g)(1) and on that basis, denied motions to dismiss indictment. *E.g.*, *Cartlidge*, 2023 WL 6368327, at *1 n.2, *4 (Farrer, M.J.) (relying on *Massey*), *R & R adopted*, 2023 WL 6368974 (W.D. Tex. Sept. 27, 2023) (Garcia, J.); *United States v. Flores*, No. SA-18-CR-00064-OLG, 2023 WL 5282384, at *2, *4–*5 (W.D. Tex. Aug. 16) (Chestney, M.J.) (relying on *Darrington* and *Scroggins*), *R & R adopted*, 2023 WL 7190729 (W.D. Tex. Oct. 30, 2023) (Garcia, J.); *United States v. Palmer*, No. 4:23-CR-104, 2023 WL 3313051, at *2 (N.D. Tex. May 8, 2023) (Pittman, J.) (relying on *Massey* and *Scroggins*); *United States v. Mosely*, No. CR 22-620, 2023 WL 4765596, at *3 (S.D. Tex. July 26, 2023) (Rosenthal, J.) (relying on *Scroggins*); *United States v. Thompson*, 670 F. Supp. 3d 381, 385, 387 (E.D. La. 2023) (Ashe, J.) (relying on *Darrington*, *Massey* and *Scroggins*); *United States v. Mendez*, No. 2:22-CR-00656, 2023 WL 3097243, at *2–*3 (S.D. Tex. Apr. 26, 2023) (Tipton, J.) (relying on *Massey* and *Scroggins*); *United States v. Martin*, No. 6:20-CR-00047-01, 2024 WL 129337, at *2 & n.13, *7 (W.D. La. Jan. 11, 2024) (Summerhays, J.) (relying on *Darrington* and *Anderson*); *United States v. Delafose*, No. 2:23-CR-00185-01, 2023 WL 7368239, at *1 & n.2, *2 (W.D. La. Nov. 7, 2023) (Cain, J.) (relying on *Darrington* and *Scroggins*); *United States v. Nathan,* No. CR 23-174, 2024 WL 216926, at *2 & n.21, *3–*4 (E.D. La. Jan. 19, 2024) (Morgan, J.) (relying on *Darrington* and *Anderson*); *United States v. Bazile,* No. CR 23-34, 2023 WL 7112833, at *2, *4 (E.D. La. Oct. 27, 2023) (Africk, J.) (relying on *Darrington*, *Massey* and *Scroggins*); *Brown*, 2024 WL 1076250, at *2 & n.1, *6–*7 (Johnson, J.) (relying on *Darrington* and *Anderson*); *United States v. Cockerham*, No. 5:21-CR-6, 2024 WL 554149, at *3–*4 (S.D. Miss. Feb. 12, 2024) (Bramlette, J.) (relying on *Darrington*); *United States v. Letterman*, No. 1:23-CR-66-HSO-BWR-1, 2023 WL 7336562, at *4–*5, *8 (S.D. Miss. Nov. 7, 2023) (Ozerden, J.) (relying on *Darrington* and *Anderson*).

In the alternative, even "assum[ing] for the sake of argument that there is *some* room for as-applied challenges" to § 922(g)(1), *Gay*, --- F.4th ----, 2024 WL 1595285, at *3 (emphasis in original), that assumption does not assist Deleon.  For one, even *Range*, on which he relies, considered burglary as a "violent crime."  *Range*, 69 F.4th at 104 (citing *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011)); *see also id.* (stating "the earliest version of [§ 922(g)(1)], the Federal Firearms Act of 1938, applied only to *violent* criminals" (emphasis in original)).

For another, limiting *Range* to its facts, the lower courts in the Third Circuit have rejected as-applied challenges to § 922(g)(1) under *Bruen* where the predicate felony convictions were the same as, or similar to, Deleon's prior convictions.  *See, e.g.*, *United States v. Garcia-Rivera*, No. 5:23-CR-118-01-JDW, 2023 WL 8894337, at *1–*2 (E.D. Pa. Dec. 26, 2023) (noting that *Range* "cautioned that its holding . . . was a 'narrow one'" and holding that § 922(g)(1) is not unconstitutional as applied to the defendant who had convictions for "burglary and unlawful possession [of a firearm by a felon]," adding that "[b]urglary has an 'inherent potential for harm to persons,' given the possibility that a 'violent confrontation' could erupt between burglar and occupant" (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990))); *United States v. Hydock*, No. CR 23-205, 2023 WL 8810793, at *2, *5–*6 (E.D. Pa. Dec. 20, 2023) (observing that *Range*, "[a] self-described 'narrow' decision," concluded that § 922(g)(1) was unconstitutional as applied to 'people like Range,'" then concluding, after conducting a historical analysis, that "history supports the disarmament of dangerous felons," and ultimately holding that § 922(g)(1) is not unconstitutional as applied to the defendant who was previously "convicted of multiple felonies, including dangerous offenses such as aggravated assault and burglary").[44]  Finding

---

[44] *See also, e.g.*, *United States v. Santiago*, No. 5:23-CR-00148, 2023 WL 7167859, at *2 & n.2, *3 (E.D. Pa. Oct. 31, 2023) (rejecting as-applied challenge by defendant who had prior convictions for burglary of a pharmacy and possession of a firearm by a felon); *United States v. Johnson*, No. CR 23-77,

these cases persuasive, the Court concludes that Deleon's as-applied challenge to § 922(g)(1) should be denied and therefore, his motion to dismiss should be further denied as to this ground.

Finally, Deleon also raises a Commerce Clause challenge to § 922(g)(1): he argues that under that Clause, the statute is unconstitutional on its face and as applied to him.  Def.'s Mot. to Dismiss at 33–34.  He acknowledges that his arguments are foreclosed by the Fifth Circuit precedents, but he raises them to preserve the issues for appeal.  Def.'s Reply at 1 n.1.  Because his arguments are so foreclosed, *see, e.g.*, *United States v. Rawls*, 85 F.3d 240, 242–43 (5th Cir. 1996); *United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013), Deleon's motion to dismiss should be denied as to these grounds as well.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant Mario Joseph Deleon's Motion to Dismiss (ECF No. 21) be **DENIED**.

**So ORDERED and SIGNED this  26th  day of April 2024.**

_____

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**

---

2023 WL 6321767, at 1, *3 (E.D. Pa. Sept. 27, 2023) (rejecting same by defendant who had prior convictions for unlawfully carrying firearms and receiving stolen property).